# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Elaine E. Bucklo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 8090 | **DATE** | 5/10/2002 |
| **CASE TITLE** | AAR International, Inc. vs. Vacances, et al. | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____ . Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
     ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]   Plaintiff's motions to dismiss defendants' counterclaim (26-1) and plaintiff's motion to strike defendants' affirmative defenses (27-1) are granted in part and denied in part. Enter Memorandum Opinion and Order.

(11) ■ [For further detail see order attached to the original minute order.]

| | | |
|---|---|---|
| | No notices required, advised in open court. | |
| | No notices required. | |
| ✓ | Notices mailed by judge's staff. | |
| | Notified counsel by telephone. | |
| | Docketing to mail notices. | |
| | Mail AO 450 form. | |
| | Copy to judge/magistrate judge. | |

2
number of notices

**MAY 13 2002**
date docketed

CDY
docketing deputy initials

5/10/2002
date mailed notice

MPJ
courtroom deputy's initials

MPJ
mailing deputy initials

U.S. DISTRICT COURT

02 MAY 10 PM 5: 29

Date/time received in
central Clerk's Office

**Document Number**

39

AAR INTERNATIONAL, INC.,     )
                                  )
        Plaintiff,     )
                                  )
    v.                     )
                                  )
VACANCES HELIADES S.A.,     )  No.  99 C 8090
NIMELIAS ENTERPRISES S.A., and  )
PRINCESS AIRLINES S.A.,     )
                                  )
        Defendants.    )

DOCKETED
MAY 1 3 2002

## MEMORANDUM OPINION AND ORDER

AAR International, Inc. ("AAR") sues Vacances Heliades S.A., Nimelias Enterprises S.A., and Princess Airlines, S.A. (collectively, the "defendants") for breach of an aircraft lease. The defendants sought an abstention because of parallel proceedings pending in Greece, and I granted the motion, but the Seventh Circuit reversed. *AAR Int'l, Inc. v. Nimelias Enters. S.A.*, 250 F.3d 510 (7th Cir. 2001). After remand, the defendants answered and filed counterclaims and affirmative defenses, which AAR now moves to dismiss and strike. The motions are granted in part and denied in part.

### I. Background

AAR, an Illinois corporation, leased a Boeing 737-3Q8 aircraft to Vacances Heliades, a French corporation, pursuant to an Aircraft Lease Agreement in May 1998. Vacances Heliades subleased the plane to Nimelias Enterprises, a Cypriot corporation with its principal

place of business in France, which then sub-subleased it to Princess Airlines, a Greek corporation. AAR claims that the defendants breached the lease by permitting delinquent EuroControl charges to accrue on the plane, failing to keep the plane in serviceable condition by allowing an engine to be taken off-wing for over one year, and by failure to pay rent under the lease.

The defendants filed a counterclaim, alleging that AAR breached the lease by failing to deliver the aircraft in the condition warranted under the lease. Specifically, they claim that AAR made and breached four relevant promises: (1) In the lease, AAR promised to deliver the Aircraft "fresh from a Boeing Maintenance Planning Document (MPD) C-7 check (overhaul) with all CPCP tasks current and completed," Lease § 1(D)(b), and that "[t]he engines will undergo a video boroscope inspection and power assurance run at or immediately prior to the time of the demonstration flight . . . . Any discrepancies found not to be in compliance with the manufacturer's maintenance manual shall be corrected at lessor's expense," id. § 2(A)(e). (2) After the demonstration flight, during which the need for certain engine repairs became evident, AAR orally promised to make the repairs at its own expense. Compl. ¶ 17. (3) AAR promised to deliver all service records for the aircraft and its engines when it delivered the aircraft. Lease § 2(A) and Lease Ex. I. (4) AAR agreed to maintain a maintenance reserve escrow account. Compl. ¶ 15. In addition, the defendants

allege that AAR defrauded them by making these promises to induce the defendants into leasing the aircraft without any intent on the part of AAR to perform its end of the bargain. The defendants also include counterclaims for non-intentional misrepresentation and for setoff, and plead several affirmative defenses. AAR moves to dismiss the counterclaims for failure to state a claim and for various pleading deficiencies, and moves to strike the affirmative defenses.

## II. Motion to Dismiss

On a motion to dismiss a counterclaim, I take all well-pleaded factual allegations in the counterclaim as true and draw all reasonable inferences in favor of the non-moving parties. *Northern Trust Co. v. Peters*, 69 F.3d 123, 129 (7th Cir. 1995). I will not dismiss a counterclaim for failure to state a claim unless it appears beyond doubt that the non-moving parties can prove no set of facts in support of their claims which would entitle them to relief. *Id.* The defendants voluntarily dismiss their counterclaim for non-intentional misrepresentation, and request leave to re-plead their setoff claim as an affirmative defense, which I grant. Therefore I consider only the breach of contract and fraud claims in Counts I and II.

## A. Breach of Contract or Warranty

To begin with, AAR argues that the defendants' counterclaim, specifically paragraph 49, does not comply with Fed. R. Civ. P.

3

9(c), which requires that *performance* of conditions precedent may be alleged generally but that denials of performance or occurrence of conditions precedent "shall be made specifically and with particularity." Paragraph 49 alleges that "Vacances Heliades has fully performed all of its contractual obligations that are required of it under the terms of the Lease that have not been excused by either a failure of a condition precedent or AAR International's prior material nonperformance of its contractual obligations." The defendants' general allegation of their own performance is sufficient; what is troublesome is the general reference to excuse due to failure of conditions precedent. However, the reference in paragraph 49 to failure of conditions precedent relates only to the defendants' own performance, a matter which may be pleaded generally. In any event, the defendants identify two contractual obligations or "conditions precedent" in paragraph 15: delivery of service records and maintenance of a reserve escrow account. AAR's failure to deliver service records on May 21, 1998, and again upon request after April 1999, is adequately alleged elsewhere in the counterclaim. ¶¶ 19, 30. There are no specific or particular allegations about the failure to maintain an escrow account, but that claim is dismissed anyway for reasons explained below. In the alternative, AAR denies that either of these alleged contractual terms were actually conditions precedent, but if that is true, no particularity is required. *See*

5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1304 (2d ed. 1990) ("Rule 9(c) only requires a denial of those matters that must be performed or have occurred as a prerequisite to suit."). I need not determine whether the contractual obligations were actually "conditions precedent" to resolve the Rule 9(c) question, but I will revisit this objection in my discussion of the affirmative defenses below.

The defendants characterize their counterclaim as one for breach of contract. AAR argues that they cannot maintain a breach of warranty claim dressed up as a breach of contract claim, but the label given to the claims in the counterclaim is of little significance. What matters is whether the defendants can state a claim under any legal theory, not how the complaint characterizes a claim. *See Albiero v. City of Kankakee*, 122 F.3d 417, 419 (7th Cir. 1997) ("Having specified the wrong done to him, a plaintiff may substitute one legal theory for another without altering the complaint."). In any event, the defendants have alleged both warranty and contract claims. The U.C.C. governs the claims based on the Lease. *See* 810 ILCS 5/2A-102 (Article 2A "applies to any transaction, regardless of form, that creates a lease."). Under Article 2A, an "express warranty" is created by "[a]ny affirmation of fact or promise made by the lessor to the lessee which relates to the goods and becomes part of the basis of the bargain," § 5/2A-210(1)(a), or "[a]ny description of the goods which is made part of

5

the basis of the bargain," § 5/2A-210(1)(b). The promises that the aircraft and engines would be tested and meet certain specifications prior to or at delivery fit this description. AAR argues that, because these promises do not appear in the section of the lease dedicated to "REPRESENTATIONS, WARRANTIES AND COVENANTS," Lease § 24, they should not be construed as warranties.[1] However, "[i]t is not necessary to the creation of an express warranty that the lessor use formal words, such as 'warrant' or 'guarantee', or that the lessor have a specific intention to make a warranty." 810 ILCS 5/2A-210(2). The remaining promises--to perform repairs, provide documents, and maintain an escrow account--do not fit the U.C.C. description of warranty, but are standard contractual promises.

AAR argues that the warranty claim is barred by a disclaimer in the lease that says that "THE AIRCRAFT IS LEASED TO AND ACCEPTED BY LESSEE IN 'AS IS' CONDITION AND WITH ALL FAULTS. LESSOR MAKES NO WARRANTIES WHATSOEVER WITH RESPECT TO THE AIRCRAFT, EXPRESS OR IMPLIED, EXCEPT THE WARRANTY TO TITLE APPEARING IN SECTION 4A ABOVE." Lease § 4(B). However, this conflicts with AAR's promises

---

[1] AAR argues that "[a] contract provision will only be construed as an express warranty 'where the warranties are clear and express.' *Wikoff v. Vanderveld*, 897 F.2d 232, 241 (7th Cir. 1989)." The quotation from *Wikoff* is used out of context and provides no support for AAR's argument. The court there did not hold that warranties may only be created by express language, as AAR suggests; rather, it held that, where warranties are clear and express, there is no need to resort to the U.C.C. "basis of the bargain" rule to determine whether a warranty was in fact created.

in previous sections of the lease to deliver the aircraft in a certain condition-- "fresh" from the "overhaul," *id.* § 1(D)(b), *inter alia*--and that the aircraft "*otherwise* shall be delivered to Lessee is an 'AS IS, WHERE IS' condition." *Id.* § 1(D)(e) (emphasis added). Ordinarily, acceptance of goods "as is" "implies that the seller is relieved of any further obligation to reimburse for loss or damage because of the condition of the goods." *Lake Bluff Heating & Air Conditioning Supply, Inc. v. Harris Trust & Sav. Bank*, 452 N.E.2d 1361, 1367 (Ill. App. Ct. 1983). However, the "as-is" clause here was qualified by certain express warranties, and under the U.C.C., "a written disclaimer of an express warranty contained elsewhere in the same contract is generally inoperable." *Id.; see also Snelten v. Schmidt Implement Co.*, 647 N.E.2d 1071, 1075 (Ill. App. Ct. 1995); 810 ILCS 5/2A-214. This general rule is subject to parol or extrinsic evidence "which would indicate that it is reasonable to construe the disclaimer as negating the express warranty," 452 N.E.2d at 1367, but none is presented here, and I draw all reasonable inferences in favor of the defendants for the purposes of this motion.

AAR attaches a signed "lease supplement" to its motion and asks me to consider it as evidence that the defendants accepted delivery of the aircraft on May 21, 1998. The defendants object because the lease supplement was not attached to or mentioned in

their counterclaim.[2] *See Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998) (Documents that are attached to motion to dismiss must be excluded unless they "are referred to in the plaintiff's complaint and are central to his claim."). Although the lease supplement itself was not mentioned in the counterclaim, an unsigned version of the lease supplement was attached to the lease as an exhibit and was attached to the counterclaim in that form.[3] The lease itself contemplated the lease supplement, which would be entered into at the time of the delivery. Lease § 2(D), Lease Ex. C. Moreover, the lease supplement, signed on May 21, 1998, was a written and executed modification of the lease entered into on May 14, 1998, so it was part of the lease, which is mentioned in the counterclaim and is central to the defendants' claim. Under the "rule of completeness,"

> [w]hen parties engage on a chain of correspondence relating to a transaction within a short period of time, and then one

---

[2] The defendants state in a footnote that they "have reason to believe that the signature on the lease supplement supplied by AAR . . . is not authentic," Resp. at 2 n.1, but they offer no more specific allegations to back up this conclusory charge of fraud. "[P]erfunctory and undeveloped arguments . . . are waived," *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991), as are claims that are raised only in a footnote, *Dresser Indus., Inc. v. Gradall Co.*, 965 F.2d 1442, 1448 (7th Cir. 1992). Furthermore, fraud must be pleaded with particularity under Fed. R. Civ. P. 9(b).

[3] Exhibit A to the Answer, Affirmative Defenses and Counterclaim--the lease between AAR and Vacances Heliades--is missing the first twelve pages, but the relevant provisions also appear in full in Exhibit B--the sublease between Vacances Heliades and Nimelias.

> party detaches and presents only certain links of the chain in
> its effort to state a claim for relief, the party against whom
> such an incomplete picture is painted is entitled to fill in
> the skeletal outline thus presented by the complaining party
> by adding the missing links.

*Magellan Int'l Corp. v. Salzgitter Handel GmbH*, 76 F. Supp. 2d 919, 923 (N.D. Ill. 1999) (Shadur, J.) (citing Fed. R. Evid. 106). At least one court in this district has applied this rule at the motion to dismiss stage and considered exhibits which were necessary to paint a complete picture without converting the motion to one for summary judgment. *Id.* I may consider the lease supplement as part of the lease for the purposes of this motion.

In any event, the result in this case is the same whether or not I consider the lease supplement. AAR offers the supplement as proof that the defendants "accepted the Aircraft for all purposes hereof and of the Lease." Lease Supp. § 5(ii). Although acceptance bars a party from rejecting a shipment of goods, "[a]cceptance does not itself impair any other remedy provided by [Article 2A] or the lease agreement for nonconformity." 810 ILCS 5/2A-516(2); *see also S.A.M. Electronics, Inc. v. Osaraprasop*, 39 F. Supp. 2d 1074, 1086-87 (N.D. Ill. 1999) (Gettleman, J.) (Under analogous section of Article 2, "acceptance leaves unimpaired the buyer's right to be made whole."). AAR argues that the defendants did not and may not now revoke acceptance of the aircraft, *see* 810 ILCS 5/2A-517, and the defendants do not respond to this argument. Nevertheless, even if I consider the lease supplement as conclusive of the defendants'

acceptance, AAR has not shown that mere acceptance bars an action for damages.

The lease supplement also states that "except as otherwise expressly agreed in writing by Lessor and Lessee, Lessee has inspected the Aircraft and the Aircraft satisfies the conditions set forth in the lease." Lease Supp. § 5(iii). AAR argues that this operates as a waiver of *any* remedies for breach of contract or warranty related to the condition of the aircraft. *See, e.g., Saverslak v. Davis-Cleaver Produce Co.*, 606 F.2d 208, 213 (7th Cir. 1979) ("In a contractual setting . . . waiver occurs when an obligor manifests an intent not to require an obligee to strictly comply with a contractual duty." ). Although the "determination as to what facts are sufficient to constitute waiver is a question of law," *Whalen v. K-Mart Corp.*, 519 N.E.2d 991, 994 (Ill. App. Ct. 1988), the inquiry requires me to examine the totality of the circumstances to determine whether the party against whom the waiver is to be enforced has "acted inconsistently with the [contractual] right." *Grumhaus v. Comerica Secs., Inc.*, 223 F.3d 648, 650-51 (7th Cir. 2000) (waiver of arbitration clause); *see also Schroeder Murchie Laya Assocs., Ltd. v. 1000 West Lofts, LLC*, 746 N.E.2d 294, 298 (Ill. App. Ct. 2001) (holding that trial court must conduct factual inquiry to resolve question of waiver). At this stage, I must draw all factual inferences in favor of the defendants, so even if I consider the lease supplement as evidence

10

of waiver, it does not end the inquiry as a matter of law if the defendants can produce evidence to show that, under the circumstances, they did not intend to waive their rights under the lease to have the aircraft delivered in a certain condition and to have discrepancies revealed during the demonstration flight repaired at AAR's expense. Lease § 2(A)(d).

To the extent, however, that the defendants are relying on oral promises made by AAR at the demonstration flight to repair the aircraft's engines at its own expense, they cannot state a claim. The lease contains an integration clause, stating that it constituted the entire agreement and superseded all prior agreements and understandings. Lease § 26. It also states that "[n]o amendment to this Lease shall be binding on either party unless confirmed in writing and signed by the duly authorized officers or representatives of both parties." *Id.* The counterclaim alleges that the parties entered into the lease on May 14, 1998, and that the oral promise occurred on May 21, 1998, after the demonstration flight. AAR invokes the parol evidence rule, 810 ILCS 5/2A-202, and argues that the alleged oral promise is barred as a contemporaneous agreement because it was entered into at the same time as the supplemental lease. The defendants argue that "AAR is simply wrong" that the oral promise was made contemporaneously with the lease, but whenever the oral promise was made, it cannot form the basis of a claim. If it was made prior to or contemporaneously

11

with the original lease entered into on May 14, 1998, it is excluded by the integration clause and the parol evidence rule. If it was made at any time after the original lease, it is a subsequent oral modification, which is barred by the lease itself. Lease § 26. The defendants argue that Illinois law permits oral modification of contracts even when the contract precludes oral modification, but the cases it cites for that proposition were decided under the common law of contracts, not under the U.C.C. *See Czapla v. Commerz Futures, LLC*, 114 F. Supp. 2d 715 (N.D. Ill 2000) (employment contract); *Tadros v. Kuzmak*, 660 N.E.2d 162 (Ill. App. Ct. 1995) (real estate trust agreement). Under the U.C.C., however, "[a] signed lease agreement that excludes modification . . . except by a signed writing may not be otherwise modified." 810 ILCS 5/2A-208(2). The defendants have not identified, nor am I aware of, any relevant exception[4] that would excuse the requirement of a writing in § 26 of the lease, so any oral modification is ineffective.

The two remaining contract claims arise out of the alleged failure to provide service records for the aircraft and its engine and the failure to maintain an appropriate maintenance reserve escrow account. AAR's only argument as to the service records is that the defendants waived their right to insist on the delivery of the service records when they accepted the aircraft pursuant to the

---

[4] There is a limited exception where one of the parties is not a merchant, 810 ILCS 5/2A-208(2), but this exception does not apply here. *See* 810 ILCS 5/2-104(a) (defining "merchant").

lease supplement. I have already held that waiver cannot be decided as a matter of law on the record before me, but even if the lease supplement operated as a waiver of claims arising out of the condition of the aircraft, the statement that "the Aircraft satisfies the conditions set forth in the lease," Lease Supp. § 5(iii), would not affect the defendants' entitlement to performance of lease obligations independent of the condition of the aircraft. AAR argues that the defendants did not plead that they gave notice of default as required by 810 ILCS 5/2A-516(3)(a), or plead that they accepted the aircraft on the assumption that existing nonconformities would be cured, but this level of precision is not required under federal notice pleading. A party need not allege the existence of all of the elements necessary to prevail; it need only give notice of the basis of the claim. Fed. R. Civ. P. 8(a). The claim for the failure to provide service records stands.

However, AAR argues that there is no basis for the claim of its failure to maintain an appropriate maintenance reserve escrow account because no such obligation existed under the lease. The defendants point to several provisions of the lease and its exhibits, all of which were attached to the counterclaim, but none of them requires AAR to maintain a maintenance reserve escrow account. Exhibit E to the lease, § A(i)(b), defines various payments as maintenance reserves, and § H provides for reimbursement of the lessee by the lessor for maintenance that the

lessee paid for, but neither section even mentions an escrow account, much less imposes a duty to maintain an "appropriate" escrow account. Because no such obligation appears on the face of the lease, the defendants cannot state a claim for breach on that basis. *See Budget Rent A Car Corp. v. Genesys Software Sys., Inc.*, 1996 WL 480388, at *2 (N.D. Ill. Aug. 22, 1996) (Grady, J.) (A "claim for breach of contract cannot stand absent an allegation that a contractual provision was breached."). The motion to dismiss the contract claim is therefore granted as to the allegations of failure to maintain an appropriate maintenance reserve escrow account and breach of oral promise, but otherwise denied.

### B. Fraud

The defendants assert a counterclaim for fraudulent misrepresentation based on AAR's allegedly false representations that the aircraft engines had undergone certain inspections and tests, that it was fresh from a maintenance overhaul, and that it would repair the defects that were discovered during the demonstration flight. These are the same facts underlying the breach of contract claim, and AAR argues that this amounts to no more than a claim for promissory fraud. Under Illinois law, misrepresentations of intent to perform future conduct are not actionable unless "the false promise or representation of future conduct is alleged to be the scheme employed to accomplish the fraud." *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545

14

N.E.2d 672, 682 (Ill. 1989). "In order to survive the pleading stage, a claimant must be able to point to specific, objective manifestations of fraudulent intent--a scheme or device." *Bower v. Jones*, 978 F.2d 1004, 1012 (7th Cir. 1992). One such manifestation of fraudulent intent is a breach that follows so close on the heels of the promise that the intent not to keep the promise may be inferred. *Zic v. The Italian Gov't Travel Office*, 130 F. Supp. 2d 991, 995-996 (N.D. Ill. 2001) (Bucklo, J.) (citing *Pepper v. Marks*, 522 N.E.2d 688, 691 (Ill. App. Ct. 1988)); *Roxford v. Ameritech Corp.*, No. 00 C 282, 2000 WL 1538661, at *2 (N.D. Ill. Oct. 17, 2000) (Zagel, J.) (same). In *Pepper*, the court inferred fraudulent intent from a promise that was broken only four days after it was made. 522 N.E.2d at 691. Here, AAR promised on May 14, 1998, when it entered into the lease, to deliver the aircraft fresh from an overhaul and video boroscope before delivery, and the defendants allege that these promises were broken seven days later, on May 21, 1998, when AAR delivered the aircraft without performing either function. This is sufficient to raise an inference of fraudulent intent. The allegations with regard to these promises also satisfy Fed. R. Civ. P. 9(b), which requires that the circumstances constituting fraud be pleaded "with particularity"; this means "the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Vicom,*

15

*Inc. v. Harbridge Merchant Servs., Inc.*, 20 F.3d 771, 777 (7th Cir. 1994) (citations omitted). Although these particular allegations do not appear under the heading for the fraud claim, they are sufficiently pleaded in the introductory paragraphs and the breach of contract claim.

The claim based on the oral promise to repair defects discovered during the demonstration flight is also sufficient to state a claim for promissory fraud. The promise to repair, as alleged, was open-ended, and the counterclaim does not allege a date by which the repairs were to have been made, so no inference of fraudulent intent can be drawn from the timing. Nevertheless, a scheme to defraud may be found where the broken promise is "embedded in a larger pattern of deceptions or enticements that reasonably induces reliance and against which the law ought to provide a remedy." *Desnick v. American Broad. Cos., Inc.*, 44 F.3d 1345, 1354 (7th Cir. 1995). Although one broken promise is insufficient to show a pattern or scheme to defraud, "a series of unfulfilled promises is better (though of course not conclusive) evidence of fraud than a single unfulfilled promise." *Speakers of Sport, Inc. v. Proserv, Inc.*, 178 F.3d 862, 866 (7th Cir. 1999). Here the defendants have alleged a number of related broken promises, so it is premature to conclude that they could not prove a claim of promissory fraud.

The fraud claim based on the oral promise to repair is also

pleaded with adequate particularity. The defendants allege that AAR (who) promised on May 21, 1998 (when), at the demonstration flight in Oklahoma City, Oklahoma (where) that it would repair the engine deficiencies at its own expense (what). AAR objects that the defendants have not provided the name of the person who made the promise, but where the only defendant is a corporation or institution, "the institutional identity of the caller, *viz.* that she [or he] was from [the corporate defendant], is what matters." *Blaz v. Michael Reese Hosp. Foundation*, 191 F.R.D. 570, 574 (N.D. Ill. 1999) (Bucklo, J.); *see also Heller Bros. Bedding, Inc. v. Leggett & Platt, Inc.*, No. 01 C 3409, 2001 WL 740514, at *3 (N.D. Ill. Jun 28, 2001) (Conlon, J.) (same); *S.E.C. v. Park*, 99 F. Supp. 2d 889, 901 (N.D. Ill. 2000) (Kocoras, J.) (holding that it was sufficient to identify individual who was defrauded by stating corporate affiliation). The fraud claim stands.

### III. Motion to Strike Affirmative Defenses

AAR moves to strike all twelve of the defendants' affirmative defenses on technical and substantive grounds. I grant such a motion only when the affirmative defenses are insufficient on the face of the complaint. *Heller Fin., Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1294 (7th Cir. 1989). If the defenses are legally sufficient or raise questions of fact, however, I will allow them to stand. *Id.* As pleadings, affirmative defenses are subject to the Federal Rules of Civil Procedure 8(a) and 9. *See id.*

In response to the motion to strike, the defendants withdraw their first affirmative defense, for failure to state a claim, and their eighth affirmative defense, for non-intentional misrepresentation. Their second affirmative defense contains only a conclusory statement that "Plaintiff has failed to mitigate its damages." Although some courts have held that this kind of "bare bones conclusory allegation[]" is insufficient to plead this affirmative defense, *Franklin Capital Corp. v. Baker & Taylor Entertainment, Inc.*, No. 99 C 8237, 2000 WL 1222043, at *5 (N.D. Ill. Aug. 22, 2000) (Kocoras, J.), courts have generally held that "where discovery has barely begun, the failure to mitigate defense is sufficiently pled without additional facts," *Fleet Bus. Credit Corp. v. National City Leasing Corp.*, 191 F.R.D. 568, 570 (N.D. Ill. 1999) (Aspen, J.) (citing cases). Although the answer and affirmative defenses in this case were filed almost two years after the complaint, the case spent nearly a year on appeal to the Seventh Circuit, and AAR has not given any indication that discovery has progressed beyond the beginning stages. The mitigation defense is sufficiently pled.

The defendants' third and tenth affirmative defenses relate to AAR's failure to perform certain "conditions precedent." As I noted above, AAR denies that any of the cited contract provisions are actually conditions precedent. "A 'condition precedent is one that must be met before a contract becomes effective or that is to be

18

performed by one party to an existing contract before the other party is obligated to perform.'" *Catholic Charities v. Thorpe*, 741 N.E.2d 651, 653 (Ill. App. Ct. 2000). "[A] condition precedent . . . will not be found unless the intent to create such a condition is apparent from the face of the agreement," *id.* at 654, and the intent to create a condition precedent is a "question of law where the language in the instrument is unambiguous," *id.* at 653. "Conditions precedent are generally indicated by the terms 'on the condition,' 'subject to,' 'when,' 'as soon as,' or other similar terms." *Chicago Graphic Arts Health and Welfare Fund v. Jefferson Smurfit Corp.*, No. 94 C 1957, 1995 WL 579538, at *7 (N.D. Ill. Sept. 28, 1995) (Nordberg, J.). No such language appears in any of the contract terms cited by the defendants. The defendants argue that sections 30 and 31 of the lease, respectively lessor's and lessee's conditions precedent, generally incorporate all other lease provisions and indicate that the parties intended all of their respective obligations to be "subject to the fulfillment" of the other's obligations. No reading of sections 30 and 31 bears this out. Neither section purports to incorporate all of the other terms of the contract. Although the lessor, here AAR, was entitled to demand that the lessee, here the defendants, had performed all of their obligations prior to delivery, Lease § 30(iii)(b), (c), there was no such provision applicable to the defendants as lessees. In light of the parties' decision to specifically identify

19

conditions precedent, which did not include the provisions relied on by the defendants, and the parties' failure to include any language making the defendants' performance subject to the maintenance overhaul or video boroscope inspection, I conclude as a matter of law that those provisions were not "conditions precedent." The third and tenth affirmative defenses are stricken.

AAR objects to the fourth, fifth, and sixth affirmative defenses (respectively, waiver, estoppel, and consent) as conclusory. The defendants allege for each that AAR had breached the lease and that it had consented to having the engine taken off wing, repaired, and replaced with a substitute engine. This is sufficient to give notice of the claim. To the extent that the defenses are based on AAR's alleged breach of the lease, AAR insists that the defendants must identify the specific lease provisions breached, but those provisions were adequately identified in the third affirmative defense.

The defendants seventh affirmative defense is a claim for false representation. AAR argues that this is a counterclaim improperly pleaded as an affirmative defense, but improper designation of a counterclaim as an affirmative defense or vice versa is not a basis a for striking the claim; instead I should "treat the pleading as if there had been a proper designation." Rule 8(c). Accordingly, I decline to strike the affirmative defense for the same reasons that I upheld the fraud counterclaim above.

20

The Lease contained a liquidated damages clause, Lease §
17(B), which the defendants claim is an unenforceable penalty. *See*
Affirmative Defense No. 9. Although the validity of a liquidated
damages clause is a question of law, "each one must be evaluated by
its own facts and circumstances." *Grossinger Motorcorp, Inc. v.*
*American Nat'l Bank & Trust Co.*, 607 N.E.2d 1337, 1345 (Ill. App.
Ct. 1992). The defendants allege that the amount of the damages
provided for was unreasonable at the time the parties entered into
the lease, *see id.* at 1346, and there is nothing in the record at
this point to contradict that allegation. I must draw all
reasonable inferences in favor of the non-moving party at this
stage, so the affirmative defense stands. Nevertheless, to the
extent that the defendants also allege that the liquidated damages
clause was the "product of fraud and unreasonable oppression," they
provide no supporting allegations or particularity, so they may not
rely on that allegation. *See* Rule 9(b) (fraud must be pleaded with
"particularity").

Finally, the defendants assert the existence of parallel
litigation in Greece and *forum non conveniens* as their eleventh and
twelfth affirmative defenses. These claims have already been fully
adjudicated and rejected by the Seventh Circuit, *see* 250 F.3d 510,
so they may not be asserted as affirmative defenses. The motion to
strike is therefore granted in part as to affirmative defenses one,
three, eight, ten, eleven and twelve, but otherwise denied.

III.

I GRANT the motion to dismiss as unopposed with respect to the defendants claim for non-intentional misrepresentation, and GRANT the defendants request to replead their setoff claim as an affirmative defense. The motion to dismiss the contract claim is GRANTED as to the allegations of an oral promise to repair and a failure to maintain an appropriate maintenance reserve escrow account, but otherwise DENIED; the motion is DENIED as to the fraud claim. The motion to strike is GRANTED in part as to affirmative defenses one, three, eight, ten, eleven and twelve, but otherwise DENIED.

ENTER ORDER:

*Elaine E. Bucklo*

**Elaine E. Bucklo**
United States District Judge

Dated:    May _10_, 2002